**Tara L. BRAY, Relator,**

v.

**DOGS & CATS LIMITED (1997), Respondent,**

**Commissioner of Employment and Economic Development, Respondent.**

**No. A03–1413.**

Court of Appeals of Minnesota.

May 11, 2004.

Kris L. Olen, in association with William M. Mahlum, Mahlum & Associates, P.A., St. Paul, MN, for relator.

Dogs & Cats Limited, St. Paul, MN, respondent.

Lee B. Nelson, Katrina I. Gulstad, St. Paul, MN, for respondent Commissioner.

Considered and decided by HARTEN, Presiding Judge, RANDALL, Judge, and KLAPHAKE, Judge.

## OPINION

RANDALL, Judge.

Relator Tara Bray challenges the decision of the commissioner's representative that she was discharged for employment misconduct, disqualifying her from receiving unemployment benefits. Because the record shows that relator's actions fell under the "simple unsatisfactory conduct" exception to the definition of employment misconduct, we reverse.

## FACTS

Relator Tara Bray began work at Dogs and Cats Limited (DCL) as a sales associate in the Mall of America store in 2000. In January 2002, relator was promoted to the position of store manager. At first, relator did well in her new position. But gradually, her performance deteriorated, she did not meet expectations, and intervention by higher management was required.

At times, relator turned in required paperwork late, failed to correct overstaffing problems, and failed to perform other managerial tasks to the employer's satisfaction. Although she had previously been urged to correct some of these problems,

relator did not, and on January 2, 2003, one of DCL's regional managers, Brooke Buysse, issued a "corrective counseling" to relator, stressing the importance of completing all tasks in a timely and professional manner, and arranging some additional training for relator with another store manager.

Even after the corrective counseling, however, relator's performance was sporadic, and on March 31, 2003, Buysse approached relator to inform her that her employment would be terminated. Buysse said that she "didn't think that this was a good fit" and that it seemed "that [relator] wasn't meeting the expectations ... [j]ust basic policies and procedures and basic expectations they just weren't being met." After the termination, relator applied for unemployment benefits, and received them. DCL appealed, and the matter was heard before an unemployment law judge. Buysse argued that relator was consistently late in performing a number of her duties, despite being warned about timeliness. He said relator often overstaffed her store, violating the company's payroll limits, even after being warned about overstaffing. Finally, Buysse said that relator violated a direct order from Buysse to issue a written warning to an employee who was seen in or around the DCL store before his shift was to begin.

Relator testified that she tried to perform her duties to the best of her ability, but sometimes did not understand what was required of her or was not aware that her actions would not satisfy the employer's standards. Relator said she refused to issue a written warning to the early-arriving employee because the man was African–American, and she felt that Buysse's request to discipline him might have had racial motivations. Relator went so far as to contact an attorney about the issue, and did orally direct the employee to

stay away from the store until no more than 10 minutes before his shift. Relator thought this was enough to handle the problem.

The unemployment law judge found that relator's conduct constituted an intentional disregard of the employer's expectations, and disqualified her from receiving unemployment benefits. The commissioner's representative affirmed the disqualification, and this certiorari appeal follows.

## ISSUES

I. Does the record support the conclusion that relator committed employment misconduct that disqualifies her from receiving unemployment benefits?

II. Should this court apply the amended version of Minn.Stat. § 268.095, subd. 6(a), to the facts of the case?

## ANALYSIS

### I. Misconduct

On appeal, "we review the commissioner's factual findings in the light most favorable to the commissioner's decision and will not disturb them as long as there is evidence that reasonably tends to sustain those findings." *Schmidgall v. FilmTec Corp.*, 644 N.W.2d 801, 804 (Minn.2002). But, the commissioner's conclusions "are not binding upon this court if they do not have reasonable support in the findings." *Marty v. Digital Equip. Corp.*, 345 N.W.2d 773, 775 (Minn.1984).

An employee can commit misconduct by refusing to comply with an employer's reasonable requests and policies. *See McGowan v. Executive Express Transp. Enters., Inc.*, 420 N.W.2d 592, 596 (Minn.1988). Disqualifying misconduct is defined as

(1) any intentional conduct, on the job or off the job, that disregards the standards of behavior that an employer has the right to expect of the employee or disregards the employee's duties and obligations to the employer; or

(2) negligent or indifferent conduct, on the job or off the job, that demonstrates a substantial lack of concern for the employment.

Minn.Stat. § 268.095, subd. 6(a) (2002). We note that subdivision 6(b) *specifically states* that inefficiency, inadvertence, simple unsatisfactory conduct, or poor performance due to inability or incapacity, *are not employment misconduct*. Minn.Stat. § 268.095, subd. 6(b) (2002) (emphasis added).

■ Here, the commissioner found that relator had received warnings that she must improve her performance and adhere to store procedures, but she did not fix the problems. The commissioner also found that relator disobeyed a direct order to issue a written warning to an employee. The commissioner apparently did not find relator's explanation as to the "written warning" satisfactory. The commissioner ultimately determined that relator's failure to improve her performance constituted misconduct so as to disqualify her from receiving unemployment benefits. We disagree.

Relator admits that her performance as a store manager did not meet the employer's expectations. The commissioner's findings are not clearly erroneous—relator did fail to meet deadlines and to follow store procedures. And relator admits that she did not issue a written warning to an early-arriving employee, despite the order to do so. But her conduct, although arguably "negligent and indifferent," does not demonstrate a "substantial lack of concern for the employment." Relator testified that she tried to turn paperwork in on time, and tried to arrange monthly store meetings at a time convenient for store employees. Relator sought legal advice regarding the order to discipline an employee because she felt the order might have been racially motivated. What we glean from the record as a whole is that relator attempted to be a good employee but just wasn't up to the job and was unable to perform her duties to the satisfaction of the employer. The only reasonable conclusion that this record supports is that relator was discharged for "inefficiency, inadvertence, simple unsatisfactory conduct, [or] poor performance because of inability or incapacity." That conduct is specifically not disqualifying employment misconduct; the commissioner's decision is reversed.

## II. Retroactivity

■ In reversing the commissioner's denial of unemployment benefits to relator, we apply the 2002 definition of employment misconduct found in Minn.Stat. § 268.095, subd. 6(a), rather than the later version of the statute found in 2003 Minn. Laws 1st Spec. Sess. ch. 3, art. 2, § 13, which became effective August 1, 2003.

The definition of "misconduct" has been altered and interpreted in the last several years. *See Houston v. Int'l Data Transfer Corp.*, 645 N.W.2d 144 (Minn.2002) (discussing 1999 amendments to Minn.Stat. § 268.095, subd. 6); *Isse v. Alamo Rent–A–Car*, 590 N.W.2d 137, 139–40 (Minn. App.1999) (discussing 1997 codification of misconduct definition found in *Tilseth v. Midwest Lumber Co.*, 295 Minn. 372, 204 N.W.2d 644 (1973)), *review denied* (Minn. Apr. 20, 1999). Minn.Stat. § 268.095, subd. 6(a) has recently been amended to define misconduct as "any intentional, negligent, or indifferent conduct, on the job or off the job, (1) that evinces a serious violation of the standards of behavior the employer has the right to reasonably expect

of the employee, or (2) that demonstrates a substantial lack of concern for the employment." 2003 Minn. Laws ch. 3, art. 2, § 13. This amendment became effective August 1, 2003. See Minn.Stat. § 645.02 (2002) (providing that laws become effective August 1 of the year enacted unless otherwise specified).

Relator here was discharged March 31, 2003, *before* the amended law became effective. The Department of Employment and Economic Development, in its brief to this court, announced its intention to apply the law in effect at the time of the commissioner's decision (September 3, 2003), rather than the employee's date of discharge, to future cases. This is an error of law. An employee's conduct should be judged against the law in effect at the time of the termination; that is the date that the employer terminated the employee for committing conduct that the employer felt both deprived the employee of the job and the right to unemployment benefits. It is, if you look at it honestly, an unacceptable standard to judge an employee's conduct by a legislative standard put into place *after* the conduct happened. It is not fair to hold an employee to a standard of conduct *that had not been defined at the time the employee committed the alleged misconduct.* It is basic fairness that someone is entitled to notice of what is expected before one can be punished for not doing what is expected.

To the facts in this case, we apply the law in effect at the time of the discharge, the 2002 statute, and its definitions.

For cases arising from conduct that occurred after August 1, 2003, the August 1, 2003 changes will be applied.

## DECISION

Relator is not disqualified from receiving unemployment compensation. She was discharged for inefficient, unsatisfactory conduct, and poor performance due to inability, conduct specifically exempted by statute from the definition of disqualifying misconduct.

The 2002 version of Minn.Stat. § 268.095, subd. 6, was the law in effect at the time relator was discharged. Thus, that statute was applied to the facts in this case.

**Reversed.**