Clara S. BROWN, Relator,

v.

NATIONAL AMERICAN UNIVERSITY, Respondent,

Commissioner of Employment and Economic Development, Respondent.

No. A04–62.

Court of Appeals of Minnesota.

Sept. 14, 2004.

Thomas H. Boyd, Michael E. Obermueller, Winthrop & Weinstine, P.A., Minneapolis, MN, for relator.

Kathryn M. Nash, Gray, Plant, Mooty, Mooty & Bennett, P.A., Minneapolis, MN, for respondent-employer.

Lee B. Nelson, Linda A. Holmes, Minnesota Department of Employment and Economic Development, St. Paul, MN, for respondent-commissioner.

Considered and decided by ANDERSON, Presiding Judge; PETERSON, Judge; and SHUMAKER, Judge.

## OPINION

GORDON W. SHUMAKER, Judge.

Relator challenges the decision by the commissioner's representative that she is disqualified from receiving unemployment benefits because she was discharged for employment misconduct. Relator, who was discharged for borrowing money from respondent university's adult students, argues that under the 2002 statutory definition she did not commit employment misconduct. Because we look to the date an employee was discharged rather than the day or days on which the employment misconduct occurred to determine which statutory definition applies, we apply the 2003 statutory definition of misconduct. Under that definition, relator committed employment misconduct, and we therefore affirm the decision by the commissioner's representative.

## FACTS

Relator Clara Brown worked as a receptionist and administrative assistant for respondent National American University (NAU) from May 15, 2000, until August 4, 2003. Her immediate supervisor was Mary Ellen Schmidt, the campus director of NAU.

In the fall of 2001, Schmidt learned that Brown had borrowed money from a stu-

dent. Schmidt told Brown that this was inappropriate. Brown both acknowledged the inappropriateness of borrowing money from students and said she would not do so again. Schmidt made no formal reprimand nor did she tell Brown that further similar conduct could jeopardize her employment.

In October 2002, Schmidt discovered that Brown had again borrowed money from a student. Schmidt reiterated to Brown that such conduct was inappropriate and said that it could result in the loss of her job. Schmidt learned in early July 2003 that Brown had borrowed money from another student. On July 2, 2003, Schmidt told Brown that this conduct could not continue and that "it was grounds for termination." On July 28, 2003, a student complained to NAU's director of admissions that she had loaned money to Brown but that the loan had not been repaid. The record is not clear as to when this loan was made.

NAU discharged Brown on August 4, 2003, for "borrowing money from students." After being denied unemployment-compensation benefits by a representative of the commissioner of the department of employment and economic development, Brown brought the matter before this court through certiorari.

## ISSUES

1. Does this court look to the date of discharge or the dates on which the employment misconduct occurred to determine which statutory definition of employment misconduct applies?

2. Under the applicable statutory definition, did relator commit employment misconduct when she continued to engage in conduct that her employer had warned her was inappropriate and would result in discharge?

## ANALYSIS

*Applicable Law*

■ Although Brown argues that the record does not support a finding of employment misconduct, we first address the issue of which statutory definition of employment misconduct applies. When Brown borrowed money from NAU students, the statutory definition for employment misconduct provided:

(a) Employment misconduct means:

(1) any intentional conduct, on the job or off the job, that disregards the standards of behavior that an employer has the right to expect of the employee or disregards the employees duties and obligations to the employer; or

(2) negligent or indifferent conduct, on the job or off the job, that demonstrates a substantial lack of concern for the employment.

(b) Inefficiency, inadvertence, simple unsatisfactory conduct, poor performance because of inability or incapacity, or absence because of illness or injury with proper notice to the employer, are not employment misconduct.

Minn.Stat. 268.095, subd. 6(a)(b) (2002).

Effective August 1, 2003, the statutory definition was amended to provide:

Employment misconduct means any intentional, negligent, or indifferent conduct, on the job or off the job (1) that evinces a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee, or (2) that demonstrates a substantial lack of concern for the employment.

Inefficiency, inadvertence, simple unsatisfactory conduct, a single incident that does not have a significant adverse impact on the employer, conduct an av-

erage reasonable employee would have engaged in under the circumstances, poor performance because of inability or incapacity, good faith errors in judgment if judgment was required, or absence because of illness or injury with proper notice to the employer, are not employment misconduct.

Minn.Stat. 268.095, subd. 6(a) (Supp.2003).

The latter was the definition in effect when NAU discharged Brown and was the definition on which the commissioner's representative relied in upholding Brown's disqualification from benefits.

In *Bray v. Dogs & Cats Ltd. (1997)*, 679 N.W.2d 182 (Minn.App.2004), this court held that the law in effect at the time of discharge is to be applied in determining an employee's eligibility for unemployment compensation benefits: "An employee's conduct should be judged against the law in effect at the time of the termination; that is the date that the employer terminated the employee for committing conduct that the employer felt both deprived the employee of the job and the right to unemployment benefits." *Id.* at 186. But this court also referred to the date of the misconduct as determinative of the law to be applied. *Id.* Despite this reference, the *Bray* court several times indicated that the controlling date is the date of discharge. *Id.*

 We hold that the intent of *Bray* and the most meaningful application of the law is to treat the statutory definition of misconduct in effect at the date of discharge as controlling. This holding reflects two important facts. First, the operative event that determines qualification for unemployment compensation benefits in these circumstances is discharge from employment. Minn.Stat. § 268.095, subd. 4 (2002). We are not concerned with whether or not the employee should have been discharged but only with the employ-

ee's eligibility for benefits after termination of employment. *Auger v. Gillette Co.*, 303 N.W.2d 255, 257 (Minn.1981).

Second, although misconduct that leads to discharge might occur on a single date, it is more likely, as here and in *Bray*, that the discharge will result from a series of acts or omissions extending over days, weeks, months, or perhaps years. In such cases, if the definition of misconduct changes, the commissioner and the courts would be perplexed as to which conduct to apply the legal focus. The discharge date provides a clear and definitive time for the application of the law.

*Misconduct*

 On review of an unemployment-benefits case, this court must determine whether the record reasonably supports the decision of the commissioner's representative. *Tuff v. Knitcraft*, 526 N.W.2d 50, 51 (Minn.1995). We view the findings of the commissioner's representative in the light most favorable to the decision and "will not disturb them as long as there is evidence that reasonably tends to sustain those findings." *Schmidgall v. FilmTec Corp.*, 644 N.W.2d 801, 804 (Minn.2002).

Whether a former employee is disqualified from receiving unemployment benefits is a mixed question of law and fact. *Id.* The determination of whether an employee committed a particular act is a question of fact. *Scheunemann v. Radisson S. Hotel*, 562 N.W.2d 32, 34 (Minn.App.1997). Whether an act constitutes employment misconduct is a legal question, which this court reviews de novo. *Lolling v. Midwest Patrol*, 545 N.W.2d 372, 377 (Minn.1996).

When an employee is discharged because of employment misconduct, he or she is disqualified from receiving unemployment-compensation benefits. Minn.

Stat. § 268.095, subd. 4 (Supp.2003).[1] Under the statute, employment misconduct includes not only intentional but also negligent and indifferent acts if they evince "a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee...." Minn.Stat. § 268.095, subd. 6(a)(1) (Supp. 2003).

Brown argues that NAU had no policy regarding employees borrowing money from students. Without a policy, she contends, there could not be misconduct based on a violation of company policy. We are aware of no law that requires that an employer have an express "policy" regarding prohibited behavior for employees. The focus of the definition of misconduct is on "standards of behavior the employer has the right to reasonably expect of the employee...." *Id.* When a supervisor tells an employee that certain employment conduct is inappropriate, the supervisor thereby reveals a standard of employment behavior. Schmidt stated this standard to Brown in the fall of 2001. Brown accepted the standard by agreeing that borrowing money from students was inappropriate. And she agreed to abide by the standard in the future. But she did not abide by the standard.

It is reasonable to infer that if an employee acknowledges the inappropriateness of certain behavior on the job, she might expect some employment consequences if she repeats the behavior. Schmidt expressed those consequences in October 2002, when she told Brown, who had repeated her borrowing, that any further similar conduct could result in the loss of Brown's job. Nevertheless, Brown again borrowed money from a student.

Having been told at least twice that borrowing money from students was inappropriate conduct, Brown was aware that her employer expected her not to continue with such behavior. Either intentionally or with indifference, both supported in the record, Brown ignored the standard to which NAU expected her to conform and thereby committed employment misconduct.

## DECISION

The record reasonably supports the decision of the commissioner's representative that under the amended definition of employment misconduct Brown committed misconduct where she continued to borrow money from students after specifically being warned that this type of conduct was inappropriate and would result in discharge.

**Affirmed.**

---

1. The revisor's office inadvertently substituted the term "ineligible for" for the term "disqualified from" in Minn.Stat. § 268.095, subds. 1, 4, 7, 8(a) (Supp.2003). *See* Minn. Stat. § 268.095, subds. 1, 4, 7, 8(a) (2002) (using term "disqualified from"); 2003 Minn. Laws 1st Spec. Sess. ch. 3, art. 2, § 11 (making other changes to Minn.Stat. § 268.095, subd. 1, but retaining term "disqualified from"); 2003 Minn. Laws 1st Spec. Sess. ch. 3, art. 2, § 20(j), (k) (directing revisor to change the term "disqualified from" to "ineligible for" only in Minn.Stat. § 268.095, subd. 12, and then to renumber to Minn.Stat. § 268.085, subd. 13b).