Michele SODERQUIST, Relator,

v.

UNIVERSAL SERVICES TELECOM
TECH INC., Respondent,

Department of Employment and
Economic Development,
Respondent.

No. A09–202.

Court of Appeals of Minnesota.

Nov. 10, 2009.

Michele M. Soderquist, Inver Grove Heights, MN, pro se relator.

Universal Services Telecom Tech Inc., Oakdale, MN, for respondent.

Lee B. Nelson, Amy R. Lawler, St. Paul, MN, for Department of Employment and Economic Development.

Considered and decided by
KLAPHAKE, Presiding Judge;
HALBROOKS, Judge; and BJORKMAN,
Judge.

### OPINION

KLAPHAKE, Judge.

An unemployment law judge (ULJ) determined that relator Michelle Soderquist was ineligible to receive unemployment benefits under Minn.Stat. § 268.085, subd. 9, because her employer, respondent Universal Services Telecom Tech Inc. (Universal Services), was owned by relator's daughter, and relator did not qualify to receive benefits until she was paid a threshold amount in each of the 16 quarters preceding her discharge. We affirm.

### FACTS

In this unemployment benefits case, the essential facts are not in dispute. Relator worked for Universal Services from April 24, 2004 to September 22, 2008. Relator worked full time as a technical service route manager, but she was discharged from her job when the bulk of her work was taken over by a client. Universal Services is fully owned by relator's daughter and son-in-law.

Contemporaneously with her discharge,[1] relator established an unemployment account and applied for benefits. Her weekly benefit amount was set at $465. Relying on Minn.Stat. § 268.085, subd. 9 (Supp.2007), respondent Department of Employment and Economic Development (department) initially determined that her wages could not be used for unemployment benefits because she was a family member of a business owner, was paid at least four

times her weekly benefit, and was only temporarily unemployed in the business.

Upon relator's appeal to the ULJ, a telephone hearing was held, and Universal Services submitted evidence of relator's pay records. The ULJ also denied relator benefits, applying the 2008 version of Minn.Stat. § 268.085, subd. 9, which prohibits an applicant who works for a "family" business and has been paid five times here weekly benefit from being eligible to receive benefits unless "the applicant had wages paid of $7,500 or more ... in each of the 16 calendar quarters prior to the effective date of the benefit account." Relator received the following wages for the 16 calendar quarters prior to being discharged:

| | |
|---|---|
| $ 8,077.10 | July—Sept.2004 |
| 8,076.95 | Oct.—Dec.2004 |
| 6,923.10 | Jan.—Mar.2005 |
| 7,884.60 | April—June 2005 |
| 9,423.05 | July—Sept.2005 |
| 9,773.05 | Oct.—Dec.2005 |
| 8,076.90 | Jan.—Mar.2006 |
| 10,192.29 | Apr.—June 2006 |
| 9,230.76 | July—Sept.2006 |
| 11,769.22 | Oct.—Dec.2006 |
| 9,730.76 | Jan.—Mar.2007 |
| 12,307.67 | Apr.—June 2007 |
| 11,075.91 | July—Sept.2007 |
| 13,923.05 | Oct.—Dec.2007 |
| 11,072.80 | Jan.—Mar.2008 |
| 10,621.10 | Apr.—June 2008 |

| | |
|---|---|
| $158,158.31 | Total pay for 16 quarters |

Relator argued to the ULJ that in determining the pay she received during 16 quarters, her total wages should be averaged to compute her quarterly pay. Relator also argued that the apparent purpose of the statute was to "ensure a benchmark of earnings ... for the employee who happens to have a familial relationship with the employer," and that she clearly met that requirement. The ULJ rejected relator's arguments because it found that the

---

1. Relator applied for unemployment benefits on September 21, 2008, although September 22 was her last day of work.

statute clearly set forth the proper method for computing relator's wages and that its application prohibited relator from receiving benefits. The ULJ ruled that, consistent with the statute, relator necessarily had to receive pay of $7,500 for "each" of the 16 quarters in order to reach the pay threshold for receiving benefits. The ULJ's decision notes, however, that it was "unlikely that the Legislature intended to limit benefits for employees like [relator] when it passed" the statute.

Relator sought reconsideration of the ULJ's decision, and the ULJ affirmed. The ULJ again rejected relator's request to average her wages over 16 quarters, noting that computing her average wages to arrive at the quarterly amount "is not the approach that is required by the statute," which sets forth a "clear criteria for determining when an applicant is exempt from the provisions of Minn.Stat. § 268.085, subd. 9."

Relator appealed by writ of certiorari to this court.

### ISSUE

Did the ULJ err in interpreting Minn. Stat. § 268.085, subd. 9, to prohibit relator from receiving unemployment benefits because she did not satisfy the minimum pay requirements set forth in the statute?

### ANALYSIS

 This court reviews a ULJ's decision to determine whether a party's substantial rights were prejudiced and may alter the decision only if, among other reasons, the decision is affected by an "error of law." Minn.Stat. § 268.105, subd. 7(d) (2008). The interpretation of a statute on undisputed facts is a question of law subject to de novo review. *Reider v. Anoka–Hennepin Sch. Dist. No. 11,* 728 N.W.2d 246, 249 (Minn.2007). In unemployment benefits cases, this court applies the statute in effect at the time of the employee's discharge. *Brown v. Nat'l Am. Univ.,* 686 N.W.2d 329, 332 (Minn. App.2004).

Minn.Stat. § 268.085 (2008) sets forth the eligibility requirements for receiving unemployment benefits, and subdivision 9 limits the eligibility of applicants who are related to owners of the business that employed them, as follows:

> Wage credits from an employer may not be used for unemployment benefit purposes by any applicant who:
>
> . . . .
>
> (2) is the spouse, parent, or minor child of any individual who owns or controls directly or indirectly 25 percent or more interest in the employer.
>
> This subdivision is effective when the applicant has been paid five times the applicant's weekly unemployment benefit amount in the current benefit year. *This subdivision does not apply if the applicant had wages paid of $7,500 or more from the employer covered by this subdivision in each of the 16 calendar quarters prior to the effective date of the benefit account.*

(Emphasis added.) The previous version of the statute prohibited an individual from receiving benefits if the individual was the parent of a business owner and was "temporarily, seasonally, or indefinitely unemployed and not permanently separated from the employment." Minn.Stat. § 268.085, subd. 9 (Supp.2007). The 2008 version of the statute became effective on July 6, 2008, and it applies to "applications for unemployment benefits filed on or after that date." 2008 Minn. Laws ch. 300, § 13, at 1132. Because relator applied for benefits in September 2008, the 2008 version of the statute controls here.

 This court must "ascertain and effectuate the intention of the legislature"

in interpreting statutes. Minn.Stat. § 645.16 (2008). In examining a statute, we must first determine whether the statute is ambiguous. *Am. Tower, L.P. v. City of Grant,* 636 N.W.2d 309, 312 (Minn.2001). The language of a statute is ambiguous if it is subject to more than one reasonable interpretation. *Amaral v. Saint Cloud Hosp.,* 598 N.W.2d 379, 384 (Minn.1999). This court construes words according to their "common and approved usage." Minn.Stat. § 645.08, subd. 1 (2008). If the legislature's intent is obviously discernible from a statute's language, this court interprets that language according to its plain meaning without applying other principles of statutory construction. *State v. Anderson,* 683 N.W.2d 818, 821 (Minn. 2004).

At issue here is the meaning of the word "each" as it is used in the portion of the statute that sets forth the computation to be used in determining whether an applicant is prohibited from receiving benefits due to a familial connection to the employer/business owner. "Each" is a word of common usage with a common meaning; it is defined as "[b]eing one of two or more considered individually; every." *The American Heritage Dictionary of the English Language* 560 (4th ed.2000). Given the commonly understood meaning of the word "each," we must give the word the same meaning that the ULJ did and require relator to have received wages of $7,500 in every one of the 16 calendar quarters preceding her discharge before she was eligible to receive benefits. We note that this construction is consistent with other provisions of the statute that allow the use of averaging formulas in establishing methods of wage computation only under prescribed circumstances. *See, e.g.,* Minn.Stat. §§ 268.035, subd. 23 (2008) (setting forth averaging formula for computing state's annual and weekly wage);

268.07, subd. 2 (2008) (setting forth averaging formula for computing benefits).

The facts of this case are compelling because relator was a four-year employee who worked full time for Universal Services, and she is prohibited from receiving significant benefits to which she would otherwise be entitled only because of her status as a parent of one of the owners. Her suggestion to refine the computation method by averaging her wages over the 16–quarter period seems reasonable and would be more reflective of her participation as an employee than is the simple calculation set forth in the statute. Further, as the ULJ notes, relator is not the type of employee to which the exemption was intended to apply: from the 2007 version of the statute, it appears that the statute was intended to apply to short-term "temporary" employees. However, as the language of the statute is not ambiguous, this court must apply the statute as written and must affirm the ULJ's decision. *See* Minn.Stat. § 268.069, subd. 3 (2008) (prohibiting equitable or common law allowance of unemployment benefits). We leave to the legislature the decision whether to further amend the statute to more precisely effectuate its intent.

### DECISION

Because relator did not receive the threshold amount of wages in each of the 16 quarters preceding her discharge, as required by Minn.Stat. § 268.085, subd. 9, she was not eligible to receive unemployment benefits.

**Affirmed.**