*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0282**

Jeremy Tubbs,
Relator,

vs.

Minnesota Department of Human Services,
Respondent,
Department of Employment and Economic Development,
Respondent.

**Filed December 1, 2014
Affirmed
Reyes, Judge**

Department of Employment and Economic Development
File No. 31625611-3

Jill K. Baker, Anna G. Fisher, Blethen, Gage & Krause, P.L.L.P., Mankato, Minnesota (for relator)

Minnesota Department of Human Services, St. Paul, Minnesota (respondent employer)

Lee B. Nelson, Munazza A. Humayun, Minnesota Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

Considered and decided by Reyes, Presiding Judge; Peterson, Judge; and Reilly, Judge.

**REYES**, Judge

Relator Jeremy Tubbs challenges the determination of the unemployment-law judge (ULJ) that he is ineligible to receive unemployment benefits because he was discharged for employment misconduct and aggravated employment misconduct. We affirm.

## FACTS

Tubbs was employed with respondent Minnesota Sex Offender Program (MSOP) as a security counselor from October 27, 2004, to September 5, 2013. In October of 2011, Tubbs received a warning for violating MSOP's "Tardiness and Failure to Report to Work Policy" by missing several days of work following his arrest for driving while intoxicated in September of 2011. Tubbs was also placed on a one-day unpaid suspension from work. By letter, MSOP advised Tubbs that any "further performance issues, policy/procedure violations, and/or engagement in misconduct . . . may result in further disciplinary action up to and including termination."

On July 19, 2013, Tubbs called into work sick at approximately 1:30 a.m. Tubbs was scheduled to work that day starting at 6:00 a.m. Sometime after Tubbs made the phone call to MSOP, he started drinking alcohol. Approximately twelve hours later, Tubbs called into work again and informed MSOP he would not be reporting to work the following day. Tubbs indicated that he may need to be taken off the schedule possibly into the next week. Shortly after making this call, Tubbs was picked up by North Mankato police officers pursuant to an "Apprehension and Detention" order (A&D

Order). Tubbs was in violation of his probation condition prohibiting him from consuming alcohol. Tubbs's probation officer Agent Neve had requested the assistance of police officers to bring Tubbs to Blue Earth County Jail after she was notified that he had been drinking. The result of Tubbs's preliminary breathalyzer test (PBT) indicated an alcohol concentration of .243. Tubbs was transferred to Brown County Detox due to his level of intoxication.

That same day, at approximately 6:00 p.m., Officer Price from the Mankato Department of Public Safety was dispatched to a harassment complaint reported by Tubbs's ex-girlfriend, D.M. D.M. alleged that at around 3:00 a.m. that morning, Tubbs entered her home without permission. D.M. told the officer that she eventually was able to get Tubbs to leave but that he began sending her unwanted text messages. Officer Price reviewed the text messages and noted that none of the messages were threatening. Officer Price observed that there were between thirty to fifty text messages from Tubbs to D.M., and D.M.'s responses to those messages in which D.M. repeatedly requested Tubbs to stop texting her.

Tubbs remained in detox for two days before he was transferred to Blue Earth County Jail. While in detox, Tubbs called MSOP Human Resources office to report that there were criminal charges pending against him pursuant to MSOP's policy. Tubbs indicated he did not know whether he would be going to jail or remain in detox. Tubbs requested either sick leave or a personal leave of absence for an unspecified period of time.

On July 21, 2013, a Notice of Judicial Determination of Probable Cause to Detain Tubbs was signed based on the events involving D.M. Tubbs was charged by complaint with felony stalking, gross misdemeanor stalking through mail/delivery of letter/telegram/package, misdemeanor domestic assault, misdemeanor battery, and misdemeanor trespass. Tubbs was released from jail after posting bail on July 22, 2013.

On the day that Tubbs was released from jail, Human Resources Director Melissa Gresczyk sent Tubbs a letter informing him that he was placed on an unauthorized leave of absence. The letter explained that Tubbs's July 19 request for sick leave through July 25 was denied because Tubbs's absence was due to his incarceration and was not necessitated by virtue of illness as set out in their policy. Tubbs was also informed that his request for a personal leave of absence was denied for the same reason. Two days later, MSOP received a fax from a Dr. Leah Breit of the Mankato Clinic indicating Tubbs needed a medical leave of absence from July 19, 2013 to August 10, 2013. Tubbs was notified that a tentative medical leave of absence was granted for those dates pending the outcome of MSOP's review.

A few weeks later, Tubbs received another letter from MSOP advising him that he would be placed on an unpaid leave of absence immediately. MSOP explained that on July 26, the Minnesota Department of Human Services (DHS) notified MSOP that Tubbs did not pass his background study in accordance with the Minnesota Department of Human Services Background Study Act, Minn. Stat. §§ 245.01–.34. Specifically, in order to continue his employment at MSOP, Tubbs was required to pass DHS's

4

background check and retain licensing. Tubbs was placed on this unpaid leave of absence pending the timeframe for DHS appeals.

On September 5, 2013, Tubbs received a letter of termination of employment. The letter explained that the reasons for his termination included the unexcused absences on July 19 and 20, 2013, and his continued absence from work since July 19, 2013. The letter stated there were "serious criminal charges" pending against Tubbs making him unable to perform his job as a direct result. MSOP indicated that the violation in 2011 was taken into account when it made its decision.

Following his termination, Tubbs applied for unemployment benefits. The Minnesota Department of Employment and Economic Development (DEED) issued a determination of ineligibility and found that Tubbs was discharged for employment misconduct. Tubbs appealed the determination, and a ULJ conducted an evidentiary hearing.

On November 6, 2013, the ULJ issued a decision finding that Tubbs's conduct on July 19, 2013 "interfered with his ability to perform his job duties and to report to work on July 20." The ULJ noted MSOP's policy prohibiting employees from engaging in any illegal activities and found that there was sufficient evidence in the record to support the conclusion that Tubbs had engaged in illegal activity. Moreover, the ULJ found that Tubbs's absence on July 20 was a result of him violating his probation conditions. The ULJ determined that Tubbs was ineligible for unemployment benefits due to employment misconduct.

5

Tubbs filed a request for reconsideration. The ULJ issued an order on January 9, 2014, affirming her decision. The ULJ modified her findings of fact, noting Tubbs's diagnosis of chemical dependency in 2010 and Tubbs's outpatient treatment from June 2013 through August 2013. Nonetheless, the ULJ concluded that Tubbs's "alcoholism did not cause him to trespass onto D.M.'s property," and therefore the exception for conduct as a consequence of chemical dependency was not applicable. However, the ULJ did make a finding that Tubbs "did not indicate he was requesting a leave of absence because he was sick" when he made his second call to MSOP on July 19. The ULJ modified her decision to additionally find that Tubbs was discharged because of aggravated employment misconduct. This certiorari appeal followed.

## D E C I S I O N

When reviewing an unemployment-insurance-benefits decision, this court may affirm, remand the case for further proceedings, or reverse and modify the decision if the substantial rights of the relator have been prejudiced because, among other things, the decision is unsupported by substantial evidence in view of the entire record as submitted. 2014 Minn. Laws, ch. 271, art. 1, § 1, at 1028-29 (to be codified at Minn. Stat. § 268.105, subd. 7(d) (2014)).[1] "Substantial evidence" is the relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Moore Assoc. v. Comm'r of Econ. Sec.*, 545 N.W.2d 389, 392 (Minn. App. 1996).

---

[1] *See Braylock v. Jesson*, 819 N.W.2d 585, 588 (Minn. 2012) ("When the Legislature merely clarifies preexisting law, the amended statute applies to all future or pending litigation.").

6

The purpose of unemployment benefits is to assist those who are unemployed through no fault of their own. Minn. Stat. § 268.03, subd. 1 (2012). The statute is remedial in nature and must be applied in favor of awarding benefits, and any provision precluding receipt of the benefits must be narrowly construed. Minn. Stat. § 268.031, subd. 2 (2012).

**I.     The ULJ did not err by determining that Tubbs is ineligible for unemployment benefits because he was discharged for misconduct.**

An employee who was discharged is eligible for unemployment benefits unless the discharge was for employment misconduct. Minn. Stat. § 268.095, subd. 4(1) (2012). "Employment misconduct" is defined as "any intentional, negligent, or indifferent conduct, on the job or off the job that displays clearly: (1) a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee; or (2) a substantial lack of concern for the employment." 2014 Minn. Laws, ch. 239, art. 2, § 5, at 772-73 (to be codified at Minn. Stat. § 268.095, subd. 6(a) (2014)). "Whether an employee committed employment misconduct is a mixed question of fact and law." *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006). Appellate courts review whether a particular act constitutes disqualifying misconduct de novo. *Stagg v. Vintage Place Inc.*, 796 N.W.2d 312, 315 (Minn. 2011). But whether the employee committed misconduct is a fact question. *Peterson v. Nw. Airlines Inc.*, 753 N.W2d 771, 774 (Minn. App. 2008), *review denied* (Minn. Oct. 1, 2008). This court reviews the ULJ's factual findings in the light most favorable to the decision. *Stagg*, 796 N.W.2d at 315.

7

Tubbs argues that the ULJ erred by denying him unemployment benefits for reasons other than ones forming the basis for his termination as stated by MSOP. We disagree. The ULJ's finding that Tubbs was terminated because of pending criminal charges, unexcused absences, and the inability to perform his duties as a direct result of the charges is supported by substantial evidence in the record. Moreover, MSOP specifically referred to his pending criminal charges and his inability to perform his work duties as a direct result of those charges in its termination letter to Tubbs.

Tubbs also challenges the ULJ's finding that he trespassed on the premises of D.M.'s property. Tubbs argues that the ULJ erroneously relied on hearsay evidence. The evidentiary standard in an unemployment hearing need not conform to the rules of evidence, and a ULJ may consider hearsay statements if they are deemed reliable. 2014 Minn. Laws, ch. 251, art. 2, § 15, at 862 (to be codified at Minn. Stat. § 268.105, subd. 1(b) (2014)); 39 Minn. Reg. 147,151,154 (Aug. 4, 2014) (to be codified at Minn. R. 3310.2922 (Supp. 2014)). Moreover, unlike criminal proceedings, a ULJ is permitted to make factual determinations based on a preponderance of the evidence. Minn. Stat. § 268.031, subd. 1 (2012) (stating"[a]ll issues of fact under the Minnesota Unemployment Insurance Law are determined by a preponderance of the evidence"). Here, the ULJ relied on charging documents and police reports in making her finding. The police report and statement of probable cause were based on an interview with a witness and enumerated observations made by the officer at the scene. The ULJ found these documents reliable.

Additionally, Tubbs did not dispute the allegations against him at the unemployment hearing. As such, faced with the complaint on one hand and silence on the other, the ULJ could reasonably infer that the allegations in the complaint were likely true and that Tubbs likely trespassed on his ex-girlfriend's property. *See* 39 Minn. Reg., at 154 (to be codified at Minn. R. 3310.2922) (permitting the ULJ to "draw adverse inferences from the refusal of a witness to testify on the basis of any privilege"). The ULJ's finding that Tubbs trespassed on D.M's property, thereby engaging in illegal conduct, is supported by substantial evidence in view of the entire record.

As previously stated, "misconduct" includes conduct that displays "a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee." 2014 Minn. Laws, ch. 239, art. 2, § 5, at 772-73 (to be codified at Minn. Stat. § 268.095, subd. 6(a)(1)). This definition requires an objective determination: "[W]as the employer's expectation for the employee reasonable under the circumstances?" *Jenkins v. Am. Exp. Fin. Corp.*, 721 N.W.2d 286, 290 (Minn. 2006). The ULJ concluded that MSOP had a reasonable right to expect its employees to refrain from engaging in criminal activity, and Tubbs's illegal conduct was a serious violation constituting misconduct. We agree.

MSOP's employment policy explicitly states that, "[e]mployees will not engage in any illegal activities." This written policy was made known to all of its employees, including Tubbs. Tubbs was made further aware of this policy in 2011 following his arrest and conviction. At that time, MSOP could have terminated his employment. Instead, Tubbs was given another opportunity and a warning that similar conduct could

9

result in his discharge. Moreover, given the nature of Tubbs's job as a security counselor, it was reasonable to expect that Tubbs refrain from illegal activities. Tubbs violated MSOP's policy when he trespassed on D.M.'s property, which led to the criminal charges against him.

Tubbs also challenges the ULJ's finding that his absence on July 20 was a result of violation of his probation conditions. "Whether an employee's absenteeism and tardiness amounts to a serious violation of the standards of behavior an employer has a right to expect depends on the circumstances of each case." *Stagg*, 796 N.W.2d at 316. An employer has the right to create and enforce reasonable attendance policies, and an employee's refusal to abide by these policies is generally employment misconduct. *Wichmann v. Travalia & U.S. Directives, Inc.*, 729 N.W.2d 23, 28 (Minn. App. 2007).

Here, MSOP had a right to reasonably expect Tubbs to remain law abiding. Tubbs was taken to detox after he came into contact with police officers pursuant to an A&D order. The A&D order was issued by Tubbs's probation officer because Tubbs violated his probation conditions. Tubbs was unable to report to work on July 20 as a result. The record supports the ULJ's finding that Tubbs's absence on July 20 constitutes employment misconduct.

Tubbs further argues that he was not "incarcerated" on July 20 within the meaning of the word in MSOP's policy. Tubbs's argument focuses on challenging MSOP's contention that Tubbs requested sick leave even though he was incarcerated, in violation of MSOP's policy. Tubbs's argument, focusing on the MSOP policy, is misplaced.

The issue in unemployment-benefits proceedings is whether Tubbs's conduct constitutes employment misconduct for the purpose of unemployment benefits, not whether the employer was justified in terminating the employment under its policy. *Brown v. Nat'l Am. Univ.*, 686 N.W.2d 329, 333 (Minn. App. 2004), *review denied* (Minn. Nov. 16, 2004). A former employee may be denied benefits for engaging in employment misconduct even if the conduct did not warrant termination under the employer's policies. *Stagg*, 796 N.W.2d at 313. Here, it is undeniable that Tubbs made commendable efforts to remain in contact with MSOP and to comply with their reporting policies and expectations. However, for purposes of unemployment benefits, Tubbs's conduct leading to his inability to report to work on July 20 constituted a violation of the standards of behavior MSOP had a right to reasonably expect. Specifically, MSOP had a right to expect that Tubbs would not be absent from work because he was in detox and in violation of his probation conditions. Tubbs's absence on July 20 constituted employment misconduct.

Tubbs asserts that his absence on July 20 was a consequence of his chemical dependency. *See* 2014 Minn. Laws, ch. 239, art. 2, § 5, at 772-73 (to be codified at Minn. Stat. § 268.095, subd. 6(b)(9) (2014)) (stating that employment misconduct does not include "conduct that was a consequence of the applicant's chemical dependency, unless the applicant was previously diagnosed chemically dependent or had treatment for chemical dependency, and since that diagnosis or treatment has failed to make consistent efforts to control the chemical dependency"). Tubbs argues that, contrary to the ULJ's finding that he was absent on that date because he violated his probation conditions,

Tubbs was actually housed in a detoxification facility because of his chemical dependency.

But adopting Tubbs's argument that his behavior of missing work was a "consequence of . . . chemical dependency" would result in an attenuated application of that statutory provision. Tubbs's conduct of missing work stemmed from his unexcused absence, which in turn, stemmed from his act of violating his probation by consuming alcohol. In addition, the unemployment statutes make clear that behavior relating to DWI convictions that interferes with a person's employment does not qualify under the chemical-dependency exception. *See id.* (to be codified at Minn. Stat. § 268.095, subd. 6(c) (2014)) ("[R]egardless of [the above subsection], conduct in violation of sections 169A.20, 169A.31, or 169A.50 to 169A.53 that interferes with or adversely affects the employment is employment misconduct."). Tubbs's conduct resulted from a probation violation following his conviction of DWI under Minn. Stat. § 169A.20 (2012). The ULJ's finding is supported by the record.

Tubbs also argues that his absence on July 20 was due to his illness. *See id.* (to be codified at Minn. Stat. § 268.095, subd. 6(b)(7) (2014)) (stating that employment misconduct does not include "absence because of illness or injury of the applicant, with proper notice to the employer"). Tubbs argues that his level of intoxication presented a danger to his health and well-being. We find this argument without merit. There is no precedent supporting an argument that having an alcohol concentration at a level requiring detoxification constitutes an "illness" under the statute.

**II.** **The ULJ did not err by determining that Tubbs is ineligible for unemployment benefits because he was discharged for aggravated misconduct.**

On reconsideration, the ULJ issued an order modifying her earlier decision to additionally find that Tubbs was discharged for aggravated employment misconduct. An employee who is discharged for aggravated employment misconduct is ineligible to receive unemployment benefits. Minn. Stat. § 268.095, subd. 4(2) (2012). "Aggravated employment misconduct" is "the commission of any act, on the job or off the job that would amount to a gross misdemeanor or felony if the act substantially interfered with the employment or had a significant adverse effect on the employment." Minn. Stat. § 268.095, subd. 6a(a)(1) (2012). Tubbs argues that (1) there is insufficient information in the record to support the ULJ's finding that Tubbs engaged in conduct amounting to a gross misdemeanor or felony; (2) the criminal charges against him did not substantially interfere with his employment or have a significant adverse effect on the employment; and (3) the record should be reopened to provide evidence of the ultimate dismissal of the felony and gross-misdemeanor charges against Tubbs.

The ULJ's finding that Tubbs was discharged as a result of aggravated employment misconduct is supported by the record. Unlike the standard of proof in a criminal proceeding, a ULJ may assess whether the record shows by a preponderance of the evidence that Tubbs engaged in the commission of an act that amounted to a gross misdemeanor or felony. Minn. Stat. § 268.031 (2012). Here, the charging documents and police reports note Officer Price's observation that Tubbs sent between thirty to fifty text messages to D.M. in which D.M. repeatedly requested Tubbs to stop texting her. As

13

we discussed earlier, the ULJ found these documents reliable. Thus, there is sufficient evidence in the record to substantiate the ULJ's determination that Tubbs engaged in conduct amounting to a gross misdemeanor or felony.

Tubbs also challenges the ULJ's finding that his conduct substantially interfered with his employment or had a significant adverse effect on the employment. Here, it is undisputed that Tubbs's conduct resulted in DHS disqualifying him from continuing his employment at MSOP. MSOP has a right to reasonably expect that its employees would not be disqualified from their position of employment at MSOP. DHS required Tubbs to be licensed by DHS in order to perform essential job functions as a security counselor at MSOP. Tubbs's conduct directly interfered with this requirement, causing him to become disqualified by DHS. The ULJ correctly determined that Tubbs was terminated for aggravated employment misconduct.

Finally, Tubbs requests that the record be supplemented with evidence of the ultimate dismissal of the felony and gross-misdemeanor charges against him. However, as discussed above, there is sufficient evidence to support the ULJ's determination by a preponderance of the evidence that Tubbs engaged in conduct amounting to a gross misdemeanor or felony that substantially interfered with his employment. Thus, it is unlikely that evidence of the dismissal of the criminal charges would change the outcome of the ULJ's decision as to a finding of aggravated misconduct. Moreover, Tubbs did not properly file a motion before this court to do so pursuant to Minnesota Rules of Civil Appellate Procedure 127. *See also Stephens v. Bd. of Regents of Univ. of Minn.*, 614 N.W.2d 764, 769–70 (Minn. App. 2000), *review denied* (Minn. Sept. 26, 2000) (denying

14

appellant's request to supplement the record by brief rather than filing a motion pursuant to Minn. R. Civ. App. P. 127).  We therefore deny Tubbs's request to supplement the record.

**Affirmed.**