*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0729**

Jean M. Ritter,
Relator,

vs.

Inter City Oil Co., Inc.,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed February 2, 2015
Affirmed
Peterson, Judge**

Department of Employment and Economic Development
File No. 31805102-1

Jean M. Ritter, South St. Paul, Minnesota (pro se relator)

Inter City Oil Co., Inc., Duluth, Minnesota (respondent employer)

Lee B. Nelson, Department of Employment and Economic Development, St. Paul,
Minnesota  (for respondent department)

        Considered and decided by Hudson, Presiding Judge; Peterson, Judge; and Larkin,

Judge.

UNPUBLISHED OPINION

**PETERSON**, Judge

Relator challenges an unemployment-law judge's decision that relator is ineligible for unemployment benefits because she was terminated from employment for misconduct. Relator argues that the conduct that led to her termination from employment was a single incident and that the employer's evidence was not credible. We affirm.

## FACTS

Relator Jean Ritter worked for respondent Inter City Oil Company as a lead cashier at a Marathon gas station. In September 2013, an audit showed an $8,000 inventory shortage at the gas station, and the staff at the station was told that there would be another audit to address the discrepancy. D.K., who was vice-president of corporate operations for the employer, supervised the second audit.

Relator believed that her supervisor was responsible for the shortage. She contacted corporate headquarters 6-12 times accusing the supervisor of theft or misconduct. She began to keep a file of his alleged wrongdoing and told her coworkers that she was doing so. D.K. investigated each of relator's allegations and concluded that most of the allegations were unfounded; in a few matters involving company procedures, D.K. issued orders of correction to the supervisor.

When speaking to D.K., coworkers, customers, and vendors, relator referred to the supervisor in derogatory terms, accusing him of lying and using drugs. D.K. agreed that it was appropriate for relator to report her concerns to corporate headquarters, but she noticed that relator's coworkers were uneasy because of relator's outspoken dislike of the

supervisor. D.K. repeatedly told relator that she could not engage in name-calling or unprofessional and childish behavior, particularly in front of coworkers, customers, and vendors.

About two weeks before relator was discharged, one of relator's coworker called D.K. and said that relator told her that a vendor told relator that the supervisor was slandering relator and the coworker. On October 24, the day before her employment was terminated, relator called D.K. to report what she described as another instance of theft by the supervisor. The conversation became heated and was overheard by two other employees at corporate headquarters, who advised D.K. to hang up the telephone.

On October 25, D.K. was at the Marathon station as part of the audit process. D.K. talked with members of the staff, a vendor representative, and a police officer; they did not support relator's claim that the supervisor was slandering relator and the coworker. D.K. concluded that the allegation was unfounded. D.K. told relator that she had investigated her concerns and they had not been supported; she told relator that she could not continue to engage in unprofessional behavior and name-calling. D.K. told relator that the vendor did not support relator's allegation that the supervisor slandered relator. In response, relator said, "Because you probably threatened her with her commission." D.K. then terminated relator's employment.

Respondent department of employment and economic development denied relator's request for unemployment benefits. Relator appealed, and an unemployment-law judge (ULJ) determined that relator was ineligible for benefits. After a request for

3

reconsideration, the ULJ affirmed the earlier decision.  This appeal by writ of certiorari followed.

## D E C I S I O N

We may "reverse or modify the [ULJ's] decision if the substantial rights of the petitioner may have been prejudiced because the findings, inferences, conclusion, or decision are" based on unlawful procedure, not supported by substantial record evidence, or affected by an error of law.  Minn. Stat. § 268.105, subd. 7(d)(3)-(5) (2014).

Whether an employee committed a certain act is a question of fact; we review factual findings in the light most favorable to the ULJ's decision and will not disturb those findings if the record substantially sustains them.  *Peterson v. Nw. Airlines*, 753 N.W.2d 771, 774 (Minn. App. 2008), *review denied* (Minn. Oct. 2, 2008).  Whether a particular act constitutes employment misconduct is a question of law, which we review de novo.  *Stass v. Vintage Place Inc.*, 796 N.W.2d 312, 315 (Minn. 2011).  "When the credibility of a witness testifying in a hearing has a significant effect on the outcome of a decision, the [ULJ] must set out the reason for crediting or discrediting that testimony."  Minn. Stat. § 268.105, subd. 1a(a) (2014).  We defer to the ULJ's credibility determinations.  *Bangtson v. Allina Med. Grp.*, 766 N.W.2d 328, 332 (Minn. App. 2009).

An applicant who was discharged from employment because of employment misconduct is ineligible for unemployment benefits.  Minn. Stat. § 268.095, subd. 4(1) (2014).  "Employment misconduct" is defined as "any intentional, negligent, or indifferent conduct . . . that displays clearly . . . a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee; or . . . a

4

substantial lack of concern for the employment." *Id.*, subd. 6(a) (2014). The ULJ must consider whether a single incident rises to the level of employment misconduct. *Id.*, subd. 6(d) (2014).

An employee who violates an employer's reasonable policy or who refuses to carry out an employer's reasonable directive commits employment misconduct. *Schmidgall v. FilmTec Corp.*, 644 N.W.2d 801, 806-07 (Minn. 2002). In *Schmidgall*, the employer required employees to report any injuries incurred during work hours during the shift when the injury occurred. *Id.* at 803. The employee was warned twice about failing to report an injury. *Id.* On the third occasion, the employee was discharged for failing to comply with the employer's policy. *Id.* at 804. The supreme court affirmed the department's decision that the employee committed employment misconduct, stating that "[w]hen an employee's refusal to carry out a directive of the employer is deliberate, calculated, and intentional, then the refusal is misconduct." *Id.* at 806; *see also Brown v. Nat'l Am. Univ.*, 686 N.W.2d 329, 333 (Minn. App. 2004) (concluding that ignoring employer's warning against borrowing money from students was employment misconduct), *review denied* (Minn. Nov. 16, 2004); *Vargas v. Nw. Area Found.*, 673 N.W.2d 200, 206 (Minn. App. 2004) (concluding that refusal to perform improvement plan constituted employment misconduct), *review denied* (Minn. Mar. 30, 2004).

The ULJ found that relator "was instructed to cease the accusations and investigations into [the supervisor]" and that she "was also reprimanded for acting unprofessionally towards [the supervisor]." The ULJ also found that at her last meeting with D.K., relator referred to the supervisor "in a highly juvenile and unkind manner

5

regarding his physical appearance" and accused D.K. of threatening a vendor's "commission in order to bolster [D.K.'s] findings regarding [the supervisor]." The ULJ further found that the employer responded appropriately by investigating relator's allegations of misconduct and that relator was repeatedly instructed "to stop making accusations and insulting other employees." D.K.'s testimony substantially supports these findings.

The ULJ set forth reasons for finding D.K. more credible than relator; he described D.K.'s testimony regarding relator's behavior as "highly detailed and documented well" and concluded that D.K.'s "testimony presents a highly plausible and logical chain of events leading to the decision to discharge. D.K.'s version of the events regarding [relator's] conduct and the reason for her discharge is more credible."

Based on the findings, the ULJ concluded that relator's "actions were intentional and displayed clearly a serious violation of the employer's reasonable expectations." We agree. The employer's directives to relator that she could not continue to engage in unprofessional behavior and name-calling were reasonable, and the employer had the right to reasonably expect relator to follow the directives. Relator's repeated failures to follow the directives were employment misconduct. The ULJ's decision was not affected by an error of law.

Relator claims that she was terminated because of one instance of insubordination during a telephone call on October 24, 2013. "If the conduct for which an applicant was discharged involved only a single incident, that is an important fact that must be considered in deciding whether the conduct arises to the level of employment

6

misconduct. . . ." Minn. Stat. § 268.095, subd. 6(d). The record does not support relator's claim that her employment was terminated for a single incident.

The ULJ found that relator repeatedly made disparaging remarks about the supervisor and that she was repeatedly instructed not to do so. The ULJ's findings indicate that the incident on October 24 was part of a series of actions that started well before that day and that relator's continuing unprofessional conduct on October 25 was the culminating event that led to her discharge. In the order of affirmation, the ULJ stated that relator "continued to investigate [the supervisor] and make disparaging comments about him," "[t]he employer set forth reasonable expectations regarding [relator's] ongoing investigation and conduct towards her co-worker," and "[relator] did not heed the warnings to cease her conduct regarding those matters." These statements demonstrate that the ULJ's decision that relator's conduct was employment misconduct was based on relator's course of conduct. Nothing in the record supports relator's claim that her employment was terminated only because of insubordination during the October 24 telephone call.

In her request for reconsideration, relator asked the ULJ to consider material that was not part of the hearing record. "In deciding a request for reconsideration, the [ULJ] must not consider any evidence that was not submitted at the hearing, except for purposes of determining whether to order an additional hearing." Minn. Stat. § 268.105, subd. 2(c) (2014). But the ULJ

> must order an additional hearing if a party shows that
> evidence which was not submitted at the hearing: (1) would
> likely change the outcome of the decision and there was good

cause for not having previously submitted that evidence; or (2) would show that the evidence that was submitted at the hearing was likely false and that the likely false evidence had an effect on the outcome of the decision.

*Id.*

In the order of affirmation, the ULJ acknowledged that relator submitted "additional documentation regarding the wrongdoing of a former co-worker and unprofessional behavior of . . . [D.K.]" The ULJ found that relator's additional information would "not likely change the outcome of the decision," because the central issue was "whether or not [relator] violated [the employer's] reasonable instructions that she cease her own investigation and conduct regarding [the supervisor]." The ULJ also found that relator's additional evidence "does not support that false evidence was given at the time of the hearing [that] had an effect on the outcome of the decision." The ULJ reiterated that the employer was more credible than relator.

The additional documentation that relator submitted addressed the supervisor's conduct and statements by relator's coworkers. It did not show that relator stopped investigating the supervisor and making remarks about him after being told to stop, which was the basis for the ULJ's determination that relator was discharged for employment misconduct. It was not likely that relator's proffered evidence would have changed the outcome of the ULJ's decision.

**Affirmed.**

8